Let's take up the next case, Dupo v. Timothy Hillyer. Argument for the appellate. Good afternoon, Your Honors. My name is Gilbert Lenz from the Office of the State Appellate Defender, and I'm here on behalf of Timothy Hillyer. As the Court knows, Mr. Hillyer has raised four substantive issues in this appeal, and I'm happy to discuss any of the four issues the Court wishes to address. However, I would like to focus on, in my time here, the first two arguments concerning reasonable doubt and ineffective assistance of counsel. Your Honors, the State charged Mr. Hillyer with concealment of a homicidal death under an accountability theory. Under that charge, the State was required to prove, among other things, three different elements here beyond a reasonable doubt. Specific intent, meaning, did Hillyer intend, when he picked up one end of Russell Miller's body, to participate in an act of concealment? Did Mr. Hillyer voluntarily attach himself to Jeffrey Sminshak's plan to conceal the body, knowing that Sminshak had just killed Miller and, as the State agrees, was directed to help Mr. Sminshak by Sminshak? And third, the State was required to prove beyond reasonable doubt that Mr. Hillyer did not withdraw completely from this event. And on each of these three elements, the State's evidence was insufficient. I'd like to address briefly each of those three. First, on the specific intent, we have to look at the moment of the incident, the moment when Jeffrey Sminshak directed Mr. Hillyer to help him move the body. What did Hillyer know at that moment? He knew he had walked into a trailer where one of his roommates had just killed the other one. And he saw the body to his left and he saw Mr. Sminshak calmly smoking a cigarette to his right with a threatening look on his face. He saw, Hillyer merely watched as Sminshak wrapped the body in a clear plastic bag and started to move it towards the door. That is, from a confined place where no one could see it, outdoors in a clear bag. And Sminshak directed Hillyer to give him a hand. Now, there's nothing in the evidence, in the State's evidence, to say that Hillyer knew anything more than what Sminshak wanted to do was move the body outside the trailer. That is not an act of concealment. And that's why the State's evidence here isn't sufficient on a specific intent. However, even if this Court finds that Mr. Hillyer knew that Sminshak's plan, when he took the body outside the trailer, from where it was concealed to where it wasn't, even if Mr. Hillyer knew that that was going to be an act of concealment, the State also had to prove that he voluntarily attached himself to that plan. And as the State itself agrees, Sminshak, Hillyer only acted on Sminshak's orders, and those were orders from someone who had just killed him. So the State's evidence here is simply insufficient to show that Hillyer voluntarily attached himself to any act of concealment, even if he knew there was an act of concealment going on. And third, Your Honor, even if this Court finds that there was a specific intent evidence, that there was a voluntary attachment, the State also failed to show how Mr. Hillyer didn't completely withdraw from this case, from this offense. The definition of withdrawal that's pertinent here is that a defendant must terminate his efforts, he must fully deprive his effort of effectiveness, any effort in the system, and he must communicate his withdrawal to the principal. And the State's evidence here satisfied all three of those elements. Mr. Hillyer performed a timely and complete withdrawal from any act of concealment, even assuming that he knew there was an act of concealment happening. He terminated his effort, that is, he put Mr. Miller's body back down. He fully deprived his effort of effectiveness, meaning he put Mr. Miller's body back down without moving it, in the same spot he picked it up, and perhaps most importantly here, he communicated his withdrawal to Mr. Sminshek when he put Mr. Miller down, backed away and said, I cannot do this, and he merely watched Sminshek do the rest. He watched Sminshek drag the body outside, watched him cover him up. So that was the act of concealment, and all of that happened after Mr. Hillyer completely withdrew from this offense. So the State's evidence was insufficient on all three of those elements, and if this Court agrees on any one of those, it must reverse Mr. Hillyer's conviction. And finally, Your Honors, even if you agree that the State's evidence was sufficient on all three of those elements, there's a reasonable probability in this case that the jury would have found Mr. Hillyer not guilty if they had been properly instructed on the withdrawal defense. The State's evidence offered far more than the very slight evidence that was necessary for a withdrawal instruction here, as I just detailed. All three of the, the State's evidence showed all three of the elements of withdrawal that were necessary. And it was so clear to counsel that this withdrawal defense was available that she argued that to the jury. She argued three different theories for acquittal to the jury, the third of which was, she, she emphasized that Mr. Hillyer put the body back down, told him to swing check, he was, he was, wasn't able to help him, and he stopped helping him. That's a withdrawal defense. What counsel failed to do was offer the jury the option of acquitting him on that basis. And, therefore, if the evidence, if the Court finds the evidence was insufficient here, a new trial is required where the jury can consider Mr. Hillyer's guilt with proper instructions on all the available defenses. And also, pursuant to arguments three and four, without hearing his interviews, third and fourth interviews, and certainly, at least, without hearing any reference to Mr. Hillyer's request for counsel and request to negotiate with the State. So, Your Honor, we would ask that you reverse Mr. Hillyer's conviction or remand him for a new trial. Thank you, counsel. Thank you very much. Thank you, Mr. Yackel-Lee. Thank you, Your Honor. May it please the Court, counsel. This is Patrick Daly for the State. Defendant correctly states that the State below, the prosecution below, proceed on a theory of accountability, concealing the homicide of death. The elements of concealing the homicide of death are, one, knowledge that a homicidal death occurred, and, number two, there was an affirmative act of concealment. In order to prove accountability, the State has shown, even before doing a commission of the offense, with the intent to promote or facilitate that commission, defendant solicits, or aids, if that's agreed, their attempts to aid the other person, the principal, in planning the commission of the offense. The courts have also held that accountability is proven by what's called a common design, which is where one aids another in a planning or commission of the offense, which can be inferred from the circumstances, and there doesn't need to be expressed words of agreement or assent in order to establish accountability. In this case, I think that we can certainly see, from the principal's standpoint, Mr. Simchick, that he committed the offense of concealing a homicidal death, and certainly there's knowledge that a homicidal death occurred, there's testimony from the defendant himself that he heard a gurgling, choking sound, went into the residence where Mr. Simchick was at, and saw the victim's body in purple lying on the floor, so it obviously appeared to be something along the lines of strangulation. And obviously there was an affirmative act of concealing that the body was located outside the residence under tarps and clothing and a bunch of beer cans. Isn't it a mobile home trailer or something? Yeah, something like that, yeah, I believe. But there was a garage as well, if I recall. I think so, I think that's where the body was ultimately located. It was behind the trailer. I might be wrong, I don't know, that's just my recollection. But yeah, it was just outside the residence, and it was a mobile home type residence. So the question then becomes was the state present sufficient evidence for the defendant to be found guilty under the principles of accountability? The principle of accountability that the state proceeded on is that the defendant had aided or attempted to aid the principal in the commission of this offense. Now, the defendant didn't do a whole lot. Well, in fact, the only evidence they have is what he said. Correct. And they got a body they found behind the trailer, covered up with beer cans and a tarp. Your corpus of attack. And I believe, or the fact's not true, or I don't know if they're true or not, but what he had said he did was he lifted the guy's head up and then let it down. Correct. So he didn't actually move the body. Didn't actually move the body. However, again, since we're going under the theory of accountability, he was aiding him in the commission of the offense. He got him up. We go back and turn back the facts here a little bit. Obviously, when the defendant came in and saw the body, then Mr. Simchick took a bag, like a clear plastic bag, I call it a body bag, but it is a bag, and wrapped the body in it and kind of slung it over, kind of whipped it around, I think was a characterization the defendant used, like a sack, I guess, if you will. But I think that certainly from a factual standpoint, a trial can infer that when you're wrapping the body in something like that and you're kind of slinging it around, that you're not going to prop it up on the couch to watch TV with you. You're going to do something to get rid of it. Now, then he asks the defendant to help him carry the body, and if he didn't carry the body, they're heading towards the exit of the residence. Now, the defendant's testimony was that he was so shaking and scared and nervous about this that he didn't get more than a step or two before he put the body down. Now, he'd had two strokes prior to that. Is that correct? I'm sorry? The defendant had two strokes prior to this? I think that's correct, yeah. And what was the result of those strokes? I don't know if there was any testimony that actually delayed his physical disability. He didn't have a right – his right arm didn't work very well or something like that? That might be true, but the impression I got from his statements is that he was shaking because he was scared of the defendant, not that it was a result of some kind of palsy from the prior – Or one of the strokes. A stroke, yeah. But that's a good point. But I believe that if you look at the evidence, I think that was a source of the shaking. This was more of an emotive response rather than physical. Yeah. That being the case, I think that that also leads into the issue of withdrawal. This argument comes here in the form, really, of an effective assistance to counsel. It's a defense that the defense has put on it, so it doesn't really tie into the reasonable doubt argument, but it does tie into the ineffective assistance to counsel argument. Withdrawal occurs before the commission of the offense. The defendant terminates his efforts to promote or facilitate the commission of it and wholly deprives his prior efforts of the commission, gives proper timely warning to law enforcement, or otherwise makes an effort to prevent the ongoing commission of the offense. In other words, do you think the withdrawal was when he let the head down? That's what the defendant is arguing here. What do you think? I think no, because, first of all, obviously it would only relate to the first type of withdrawal, which would be wholly depriving of his prior efforts. He didn't really deprive anything at that point, nor did he even really communicate a withdrawal from it. All that we have here is the defendant stating that I cannot physically continue helping you. You didn't say physically or I won't. You said I can't do this. Correct. That could mean I can't because I don't want to or I don't have the ability. It could. It could be either way. But these are trifecta issues, obviously. And I think if you look at it from that perspective, in an effective assistance to counsel and to counsel, you know, can we have a sixth amendment violation by not seeking a withdrawal instruction, I think the answer has to be no, because I think counsel can make a reasonably logical strategic decision that this instruction is not going to fly based upon these facts where the defendant is not clearly expressing. But I think if you look at a case law, there's usually a clear expression of a withdrawal from the offense. So to stop him because he can't do it is sort of akin to those cases where it started and you're like, I don't want to be here anymore, and you walk out of the residence. And that's not enough to constitute a withdrawal. So no matter which way you interpret that, does that mean that the withdrawal is at the stop point? The withdrawal would be at that point where he's no longer granted the benefit. Yeah. Yeah. Okay. Yeah. And I think that's the argument is that once you put the body down and say I can't do this anymore, it's shaking. At that point. Exactly. Yeah. And I think that's the best. And our argument is that that was not a withdrawal. That was simply a discontinuation. And there's a distinction, a critical distinction, because discontinuing is not going to get you that defense instruction for withdrawal in this particular circumstance. Now, it may be an issue to argue to the jury if you're looking for sympathetic votes about this defendant, because it's true. This is not, you know, it wasn't him going out and taking his body and digging a hole and then sticking it in with the defendant. There's no doubt about that. And he wasn't there to view it when it happened. He wasn't there to view it when the death happened. All he certainly knows is he died. And William, he's seen it to himself, suggests that he had to have died by non-unnatural means. But, you know, he knew where the body was taken, obviously. And the defendant's correct. I just knew the body was taken out, I thought. He was there when the body was taken out. In fact, he was with him the whole time the body was taken out. Is that in there? I didn't read that. I believe so. He just wouldn't. I thought it was that he stopped in the trail. That was it. And the body went out. I don't know how from that point on what happened. I don't think that's in the evidence. I will. Is it? Is it in there? I didn't. My recollection is that he watched him take the body out. He knew where the body was when he ordered the disclosure. Through the door. But after it got past the door, did he know anything? Did he see anything past the door from the inside of the trailer? Again, I thought that he was with him as he went outside the trailer. But I might be wrong. Okay. But it was clear from his statement that he knew that the body was taken out. He knew where the body was taken to. So it was at least, you know, the body is being drug out. And it's being taken out for a reason. And, again, it's got to be delivered to the hospital for resuscitation. So, you know, to the extent that there's a factual distinction there, I'm not sure it's particularly meaningful in the context of his knowledge that the concealment of a homicidal death is not going to be offensive there. So, based on those arguments, your Honor, I stand the remaining arguments in the State's brief for the U.S. Supreme Court to confirm the defendant's belief. Thank you, counsel. Do you have a final argument? Yes, Your Honor, thank you. Just to clarify, the evidence will show or does show that Mr. Hillier, after he discontinued his participation in any effort that he made, he did watch Mr. Sminshek drag the body outside. And I believe one of his statements was that he watched from a window as Sminshek covered the body. However, all that happened after Mr. Hillier completely discontinued what he was doing, which was very minor to begin with. But he did not know at the time that Sminshek ordered him to pick up the body, he did not know that Sminshek's intent was to drag the body outside and cover it with a tarp. All he knew was that Sminshek wanted the body out of the trailer. You know, keeping the body indoors and watching TV is more concealing than what Sminshek indicated that he wanted to do with the body at the time he ordered Hillier to help. All Hillier knew was that he was taking the body outside. All he knew was that he wanted it outside the trailer. As far as another factual issue, Mr. Hillier did have two strokes that caused weakness in his right arm, so there was some physical incapacity here. But the most important thing is, Hillier's position is that it doesn't matter whether he was physically unable to help or whether he was too nervous to help. Withdrawal is a defense of your actions. It's a defense based on your actions. What did you do? And Hillier's actions met all three of the elements of withdrawal because he discontinued his effort, he stopped, he put the body back down. Now, discontinuing may not be enough to be withdrawal, unless you have the other two elements of withdrawal, but you have those here. He wholly deprived his effort of effectiveness. He completely reversed his action, picked up the body here, put it down here. That's 180 reversal of any assistance that he offered to Mr. Sminshek. And he communicated that withdrawal. When he told Sminshek he couldn't help him. I don't know what more needs to be said to communicate to Sminshek that he was no longer going to participate in this. And, again, if this court does find a sufficient evidence here, there's certainly an ineffectiveness of counsel where counsel clearly raised the withdrawal defense and never requested the proper instruction for the jury. And we, again, ask that you reverse this conviction and remain free of trial. Thank you, counsel. Both of you will take this case under advice.